UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LILIA BELKOVA,

    Appellant,

vs.

PNC BANK, N.A.,

    Appellee.

Case No. 5:20-cv-143-BJD

## APPELLEE'S RESPONSE IN OPPOSITION TO MOTION FOR LEAVE TO INTERVENE AND MEMORANDUM OF LAW

COMES NOW Appellee, PNC BANK, N.A. ("PNC or Appellee"), by and through its undersigned counsel, and pursuant to Rule 8013(g), Fed. R. Bankr. P., responds in opposition to the Motion for Leave to Intervene filed by Land Trust Agreement No. 072003, Anisa Nazarova a/k/a Anissa Nazarova and Appellant Lilia Belkova (D.E. 8) (the "Motion to Intervene"), and in support hereof, states as follows:

### PRELIMINARY STATEMENT

The Motion to Intervene is the latest move in the elaborate and never-ending shell game being played by Appellant, Lilia Belkova, to unnecessarily complicate and prolong these proceedings, to refuse to abide by the rulings of the Bankruptcy Court, to attack PNC endlessly, and to refuse to comply with her own obligations. Appellant filed her first bankruptcy case – a Chapter 7 petition – on October 6, 2011, in Jacksonville (Case No. 3:11-bk-07333-JAF), in which she listed the debt to PNC and ultimately obtained a discharge of any personal liability therefrom. Appellant filed her second bankruptcy case on November 4, 2013, this time a Chapter 12 case, in Jacksonville (Case No. 3:13-bk-7570-JAF), which remains open and pending and is discussed in

more detail below.[1] In the open 2013 case, Appellant agreed with PNC, both of whom were represented by counsel at the time, as to the <u>secured</u> amount of its claim against the subject real property at 2251 Buckridge Trail, Loxahatchee, FL 33470 (the "Property"). The Bankruptcy Court entered at least two Orders in which that secured amount was confirmed. Thereafter, Appellant has done everything in her power to avoid PNC's lien against the Property, including but not limited to the filing of the adversary proceeding that is the underpinning of this appeal. Appellant repeatedly and opportunistically portrays herself as a victim, when in fact – by her own admission – she utilized the loan funds from PNC's predecessor-in-interest to not only pay off the existing first mortgage on the Property in favor of Mackinac Savings Bank but also to construct substantial improvements on the Property, including the home that she lives in to this day. The Motion to Intervene, in which the Movants repeatedly claim that their interests have been unrepresented when in fact Appellant herself is one of the movants, is just the latest example of the lengths that Appellant will go to avoid her obligations under the Confirmed Plan, such as the payment of taxes and insurance for the Property (while relying upon PNC to advance them on her behalf) and to abide by the rulings of the Bankruptcy Court. Appellant's conduct, as now borne out through participating as one of the "movants" in the Motion to Intervene should not be tolerated by this Court, and the Motion to Intervene should be denied in its entirety.

## UNDISPUTED FACTS

1. On April 8, 2020, Appellant commenced the instant appeal by the filing of her Notice of Appeal. (D.E. 1). Appellant appealed the Order on PNC Bank's Motion for Summary Judgment and the ensuing Final Judgment. *Id.*

---

[1] Appellant has also filed *two additional* bankruptcy cases this year alone – Case No. 9:20-bk-15112-MAM, which was filed on May 7, 2020, but dismissed by the court on June 22, 2020 because she still has her 2013 Chapter 12 case pending in Jacksonville; and Case No. 3:20-bk-2204-JAF filed in Jacksonville as recently as July 23, 2020.

2. On July 24, 2020, Movants (including Appellant) filed their Motion to Intervene herein. (D.E. 9).

3. On June 25, 2014, Appellant, through her counsel of record, filed her Motion to Value Secured Claim Four (4) of PNC Bank, N.A. (D.E. 45 in her underlying bankruptcy case at 3:13-bk-07570-JAF).[2] In the body of the Motion, Appellant <u>admitted</u> that the loan to PNC "is secured by a lien on a farm located at 2251 Buckridge Trail, Loxahatchee, FL 33470." (D.E. 45 at par. 2). The Motion sought the entry of an Order "valuing the secured claim of [PNC] in the amount of $200,000" among other payment terms. (D.E. 45 at par. 5).

4. In addition, in support of said Motion, Appellant filed a sworn Affidavit of Valuation, in which she attested, "The name of the lienholder is PNC Bank. The type of property is real property and the description of the property is *Debtor's farm* located in Palm Beach County, FL." (D.E. 45 at p. 3) (Emphasis added). Appellant went on to challenge the amount owed on the "first mortgage" to PNC, but notably did not challenge the mortgage or the lien itself. In fact, Debtor described it in her own words as a first mortgage.[3]

5. On August 15, 2014, the Bankruptcy Court entered its Order Granting Debtor's Amended Motion to Value Secured Claim Four (4) of PNC Bank, N.A., in which the Court held that the portion of Claim 4 secured by the Property was valued at $200,000. (D.E. 62 in the underlying bankruptcy case). Critically, the property was identified in the Order as 2251 Buck Ridge Trail, Loxahatchee, FL 33470.

6. On September 29, 2014, PNC filed its Motion for Relief from Order Granting Debtor's Amended Motion to Value Secured Claim Four (4) of PNC Bank, N.A. (D.E. 80 in the

---

[2] Appellee respectfully requests that the Court take judicial notice of all facts referenced from Appellant's underlying bankruptcy case pursuant to Rule 201, Fed. R. Evid.
[3] Appellant filed her Amended Motion to Value Secured Claim Four (4) of PNC Bank, N.A. solely to correct the Certificate of Service. (D.E. 52 in the underlying bankruptcy case).

underlying bankruptcy case). A final evidentiary hearing (FEH) was set on PNC's motion for August 12, 2015. (D.E. 146 in the underlying bankruptcy case).

7. On August 7, 2015, Appellant filed her Response in Opposition to Motion for Relief from Order Granting Debtor's Amended Motion to Value Secured Claim Four (4) of PNC Bank, N.A., in which Appellant – who was then represented by additional counsel[4] - did not argue or allege that PNC did not have a lien against the Property. Instead, Appellant's sole focus in her opposition to PNC's motion was the alleged prejudice that would befall her if the Order were vacated and the value of the Property undone because she had made substantial improvements to the Property.

8. The Hearing PRO Memo for the FEH on PNC's motion reflects that the parties announced in open court that the motion had settled. (D.E. 211 in the underlying bankruptcy case).

9. On August 19, 2015, Appellant filed her Second Amended Chapter 12 Plan, in which she admitted, "PNC Bank, National Association, *has the mortgage on the Debtor's farm* located at 2251 Buckridge Trail, Loxahatchee, FL 33470." (D.E. 212 in the underlying bankruptcy case at p. 2) (Emphasis added). Clearly, as far back as 2015 (and well before then), Appellant maintained that the Property was "[her] farm," and she had acknowledged PNC's lien on it.

10. On September 15, 2015, PNC filed its Objection to Confirmation of Second Amended Chapter 12 Plan in which PNC objected because it "does not reflect the agreement of the parties as to the value of the property. The parties agreed to a value of $325,000, not $320,000 as the Plan states." (D.E. 219 in the underlying bankruptcy case). PNC further objected to the plan as proposed because, "If Debtor's Chapter 12 bankruptcy is dismissed or is converted to a case under any other chapter, the terms of the original Note and Mortgage will be restored." *Id.*

---

[4] Appellant has had at least four different attorneys/firms appear on her behalf in the underlying bankruptcy case, each of whom has since withdrawn from representation.

-4-

11. On September 15, 2015, the Bankruptcy Court entered its Order Granting Motion for Relief from Order Granting Debtor's Amended Motion to Value Secured Claim Four (4) of PNC Bank, N.A., in which the Court held that "The portion of claim Four (4) *secured by the following real property* is valued at $325,000." (D.E. 220 in the underlying bankruptcy case at ¶ 4). Critically, the real property was described in this Order as 2251 Buck Ridge Trail, Loxahatchee, FL 33470. *Id.*[5]

12. On June 23, 2016, Appellant filed her Third Amended Chapter 12 Plan, in which she admitted, "PNC Bank, National Association, *has the mortgage on the Debtor's farm* located at 2251 Buckridge Trail, Loxahatchee, FL 33470." (D.E. 291 in the underlying bankruptcy case at p. 2) (Emphasis added). Appellant listed the "new initial principal balance" as $325,000 – consistent with the amount set forth in the Bankruptcy Court's Order of September 15, 2015. *Id.*

13. On February 5, 2017, Appellant filed her Fourth Amended Chapter 12 Plan through counsel, in which she admitted, "PNC Bank, National Association, *has the mortgage on the Debtor's farm* located at 2251 Buckridge Trail, Loxahatchee, FL 33470." (D.E. 364 in the underlying bankruptcy case at p. 2) (Emphasis added). Critically, Appellant went on to state, "The confirmation of this Plan shall have the effect of confirming that Debtor is the owner of this property located in Palm Beach County, Florida either individually or through the respective Florida Land Trust." *Id.* (Emphasis added).

14. On April 10, 2017, Appellant filed her Sixth Amended Chapter 12 Plan through counsel. *See* a true and correct copy of the Plan attached hereto as Exhibit "A" and incorporated herein by reference. In addition to language regarding her proposed treatment of PNC's claim,

---

[5] On October 23, 2015, the Bankruptcy Court entered its Amended Order granting PNC's Motion for Relief from Order to correct a scrivener's error in paragraph 5 of the prior Order, which related to the amount listed for the Trustee's fees. (D.E. 226 in the underlying bankruptcy case).

Appellant reiterated, "<u>The confirmation of this Plan shall have the effect of confirming that Debtor is the owner of this property located in Palm Beach County, Florida either individually or through the respective Florida Land Trust</u>." *Id.* (Emphasis added).

15. On May 12, 2017, this Court entered its Order Confirming Chapter 12 Plan Allowing Claims and Directing Distribution. *See* a true and correct copy of the Confirmation Order attached hereto as Exhibit "B" and incorporated herein by reference. In said Order, the Bankruptcy Court stated, in pertinent part, that "The property of the estate revests in the Debtor or in any other entity provided for by the Debtor in the terms of the confirmed Chapter 12 Plan upon entry of this Order," (*See* paragraph 10 of Exhibit "B") and more notably, "Deer Run Property Owners Association Inc. (Deer Run) may proceed in all respects with the pending legal action against the Debtor for alleged violation of the Declaration and related claims concerning 2251 Buckridge Trail, Loxahatchee, FL 33470 aka Lot 122, *which the Debtor owns.*" *See* paragraph 18 of Exhibit "B". (Emphasis added). In addition, the Order stated that "Secured creditors shall retain their liens." *Id.* at ¶ 7.

## ARGUMENT

As a preliminary matter, the Motion to Intervene claims that movants are indispensable parties and that they are seeking to intervene in the appeal "for the limited purpose of contesting jurisdiction over their property." Appellee does not concede that the Bankruptcy Court lacked jurisdiction over this matter and expressly disagrees with Movants' passing comments to that effect. To the extent warranted, Appellee will address any substantive arguments made by the Movants if and when they are allowed to intervene in the action.

For the time being, it bears repeating that Appellant herself is a movant in the Motion to Intervene. The Motion to Intervene is the newest brazen attempt by Appellant to avoid the multiple rulings of the Bankruptcy Court and to unnecessarily prolong these proceedings and cause hardship

and expense to Appellee related thereto. It is clear that Appellant will stop at nothing to waste the Court's time, ignore rulings of the Bankruptcy Court, and attack PNC at every turn, with complete disregard for what the record evidence actually proved. Appellant does not need this Court to determine, through the Motion to Intervene, that her interests are not being represented and instead she could choose to seek to voluntarily dismiss the appeal if she legitimately believes this Court lacks jurisdiction. As such, the Motion to Intervene should be denied as moot.

To the extent the Court considers the Motion to Intervene, then on its face, it nonetheless should be denied. First, the Motion to Intervene is not supported by any Affidavit, whether from Appellant or Ms. Nazarova. *See* Rule 8013(a)(2)(C)(i), Bankr. R. Civ. P. While the Movants correctly acknowledge that Ms. Nazarova did not seek to intervene in the adversary proceeding below, she did not argue, nor attest, that she was unable to do so, prohibited from doing so, nor offer any explanation as to why she did not seek to intervene in the proceedings below. In fact, Appellant commenced the very adversary proceeding that she is now complaining about as a "movant." She did so through counsel, not pro se. Moreover, there has been no prohibition on Appellant retaining counsel to represent her interests in this appeal. It is simply nonsensical – and frankly defies logic - that Appellant is now acting as if she is an unrelated "movant" who has not had her day in court. To the contrary, Appellant has been involved in the underlying bankruptcy case for nearly *seven years* and involved in the adversary proceeding for over a year!

Notably, in the Adversary Complaint, Appellant alleged that she was suing Appellee "to determine the priority and extent of a claimed lien *on property of the estate...*" *See* the Adversary Complaint attached hereto as Exhibit "C" and incorporated herein by reference.[6] Appellant went

---

[6] The parties to the appeal did not designate the Adversary Complaint as part of the record on appeal, but the Court can nonetheless take judicial notice of it pursuant to Rule 201(b)(2), (c) and (d), Fed. R. Evid.

on to allege that the Bankruptcy Court had jurisdiction over the matter pursuant to 28 U.S.C. §§157 and 1334 (*see* paragraph 2 of the Complaint) and that the matter was a core proceeding pursuant to 28 U.S.C. §157(b)(k). *See* paragraph 3 of the Complaint. Paragraphs 10 and 11 of the Complaint alleged that Appellant was the beneficial owner of the subject real property, while legal title was held by the Land Trust Agreement. *See* Exhibit "C" at ¶¶ 10-11. Exhibit "C" to the Complaint states that there was no change or conveyance of the beneficial interest in the subject real property. To the extent that Appellant, upon consultation with her counsel, believed that any other interested parties needed to be named in the suit *despite the prior holding of the Bankruptcy Court that Appellant was the owner of the Property*, then it was incumbent upon Appellant to include any such alleged necessary or indispensable parties. Ultimately, Appellant sought the entry of a judgment from the Bankruptcy Court determining that the Mortgage held by Appellee was invalid and determining that Appellee's claim against the estate was discharged.

What the extensive history of litigation in the bankruptcy case set forth above demonstrates (and this is only a snippet of the activity in the years-long case) is that Appellant proceeded (and has continued to proceed) as if the Property was hers and was a part of the bankruptcy estate, and Appellant – as Debtor – repeatedly sought to attack the value of Appellee's interest in the Property. At no time during her bankruptcy case did Appellant seek to include or involve her mother, Ms. Nazarova, nor the Land Trust, which Appellant has controlled for many years.

Critically, Appellant testified at her deposition taken by Appellee in October 2019 in the adversary proceeding that Ms. Nazarova currently lived in Russia, she has never lived in the United States, she did not live at the Property, she was never able to obtain a visa to visit the United States, she does not speak English, she does not read or write English, and she does not know how to use a computer. *See* the relevant excerpts from Appellant's deposition attached hereto as Exhibit "D"

and incorporated herein by reference.[7] Rule 801(d)(2), Fed. R. Evid.  Consistent with Appellant's testimony, Joseph Hanratty, the original Trustee of the Land Trust Agreement at the time of the purchase of the Property (who also is a practicing attorney in Ocala and a licensed member of the Florida Bar), testified at deposition during the adversary proceeding as follows:

> Q: Who is, to your knowledge, Anisa Nazarova, or what is her relationship to Ms. Belkova, if any?
> A: It was – first of all, I never met Anisa. I only overheard phone conversations between her and Lilia. And they were in Russian, so I have no idea what – the nature of their conversations. But it was represented to me that Anisa was her mother.
> Q: And, in fact, you wouldn't have any idea who was on the other end of that telephone, correct?
> A: Correct.
> Q: When you say it was represented to you, it was represented to you by Ms. Belkova?
> A: Correct.

*See* the relevant excerpts from Mr. Hanratty's deposition at p. 16, li. 17 - p. 17, li. 4 attached hereto as Exhibit "E" and incorporated herein by reference.

Further, Appellee disagrees with Movants' assertion that 11 U.S.C. §541(b)(1) applies in this instance, especially given the Bankruptcy Court's determination that the Property was owned by Appellant and Appellant's maintenance of that same position.  To the contrary, 11 U.S.C. §541(a)(1) by definition would encompass Appellant's interest in the Property.

Movants incorrectly argue that "the real property which is the *res* of the Trust was not listed as an asset in the debtor's bankruptcy case." D.E. 8 at p. 2.  To the contrary, as is borne out by Schedule A, filled out in her own handwriting and filed by Appellant under penalty of perjury, she

---

[7] Appellant's testimony in this regard, coupled with Mr. Hanratty's testimony, begs the question as to how counsel for Movants was able to actually communicate with Ms. Nazarova for the purposes of appearing on her behalf and attempting to represent her so-called interests in the Property.  It is presumed that, as with all other matters surrounding Appellant and her mother, Appellant has been the sole point of contact.

did in fact list the Property as property of the estate. *See* a true and correct copy of Schedule A attached hereto as Exhibit "F" and incorporated herein by reference.

Further, as noted above, the Motion to Intervene is not supported by any Affidavit, whether from Appellant nor Ms. Nazarova. It is pure conjecture, especially in the face of the detailed (if not tortured) chronological history above, to argue that Ms. Nazarova "is co-beneficiary, and was sole beneficiary at material times during 2004-2009, and Lilia Belkova is successor trustee and co-beneficiary since 2009 of Land Trust Agreement No. 072003 dated 02/09/2004." No authenticated record evidence or Affidavit has been proffered to support such claims; nor can any now be considered by the Court in determining the Motion to Intervene. Moreover, Movants' vague allegation – that Ms. Nazarova was "sole beneficiary at material times during 2004-2009" does absolutely nothing to negate the findings of the Bankruptcy Court thereafter and Appellant's continued position to the contrary. To the contrary, it demonstrates that Appellant will prepare and issue assignments of beneficial interest at her whim, whenever she believes it suits/benefits her, in order to play the shell game of who owns the Property, and who serves as Trustee on behalf of the Land Trust. Appellant has also made it clear that her shell game will not stop unless and until the Court holds Appellant accountable for her conduct.

Moreover, Movants' attempted reliance upon the Exhibits contained in Doc 6-69 is equally flawed. The referenced exhibits are not self-authenticating and contain inadmissible hearsay that the Court cannot consider. Also, the documents were dated well before the events that took place in Appellant's bankruptcy case, and well before the events laid out in painstaking detail above, including Appellant's proposal to be deemed the owner of the Property and the Bankruptcy Court's determination that Appellant is the owner of the Property. *See* paragraph 18 of Exhibit "B".[8]

---

[8] It also bears noting that in at least one of the referenced documents, Exhibit B, Appellant conveniently held herself out as the "attorney in fact" for her mother, Ms. Nazarova. *See* Doc. 6-

Movants claim that they are seeking intervention now because they "were not a party in the case below, and debtor proceeded pro se, and movants' interests were not represented, and the trust property owned by movants was erroneously encumbered by an equitable lien and subrogation." Contrary to Movant's assertions, however, Appellant is one of the movants, and she cannot conceivably argue that she was *not* a party in the case below, having commenced the adversary proceeding through the filing of her Adversary Complaint. *See* Exhibit "C" attached hereto. Secondly, Appellant was represented by counsel at the time the adversary proceeding was filed and for months thereafter. Appellant was given the opportunity to retain new counsel but did not do so. That does not mean that "movants' interests were not represented" when, in fact, Appellant had counsel who was well aware of Appellant's prior claims about her mother's purported interest. Regardless, the Bankruptcy Court had already determined that Appellant owned the Property, which Appellant not only sought to have the Bankruptcy Court determine but never challenged or disputed. *See* Exhibit "B". Further, even in her Response in Opposition to Defendant's Motion to Dismiss Adversary Complaint filed on February 13, 2019, Appellant stated that, on the Petition date (November 4, 2013), <u>she was the beneficial owner of the Property</u>. D.E. 6-5 at ¶ 4.

As the Bankruptcy Court acknowledged in the summary judgment Order on appeal, "later documents, which come fast and furious, appear to be self-created" and further that the Court was presented with "a deluge of documents transferring interests and trustee rights in connection with the Land Trust and the Property." D.E. 1-2 at p. 3. In short, Movants are incorrect when alleging

---

69 at p. 2. In addition, of particular interest is the fact that Exhibit A lists Trust Management, LLC as the Trustee to the Land Trust Agreement, of which Appellant is listed as the managing member. *See* Doc. 6-69 at p. 48.

-11-

that their interests were not addressed because Appellant provided the Bankruptcy Court with the very same documents that Movants now refer to/rely upon in support of their Motion to Intervene.

Ultimately, to the extent that the movants have any legitimate (and verifiable) interest in the Property that arose *after* the bankruptcy events laid out in detail above, which is denied by Appellee, those interests are nonetheless adequately represented in this action by and through Appellant without the need for intervention.

In sum, Movants have not satisfied each and every condition required to intervene in this action pursuant to Rule 8013(g), Bankr. R. Civ. P. (nor those factors set out in *Chiles v. Thornburgh,* 865 F. 2d 1197, 1213 (11th Cir. 1989)), and the Motion to Intervene should be denied.

## MEMORANDUM OF LAW

Movants have relied on the factors set forth in *Chiles, supra* at 1213, to support their Motion to Intervene. (D.E. 8 at p. 5). While *Chiles* analyzed a motion to intervene as a matter of right, the movants have nonetheless failed to satisfy their burden under a *Chiles* analysis. "Pursuant to the *Chiles* criteria, a proposed intervenor must show: (1) that the intervention application is timely; (2) that an interest exists relating to the property or transaction which is the subject of the action; (3) that disposition of the action, as a practical matter, may impede or impair the ability to protect that interest; and (4) the existing parties to the lawsuit inadequately represent the interests. *Chiles,* 865 F.2d at 1213." *Federal Sav. and Loan Ins. Corp. v. Falls Chase Special Taxing Dist.,* 983 F. 2d 211, 215 (11th Cir. 1993).

With regard to the first factor, while Rule 24, Fed. R. Civ. P., does not contain a deadline for what constitutes a "timely motion," Appellee acknowledges that the Motion to Intervene was filed within thirty days after the appeal was docketed as required by Rule 8013(g), Bankr. R. Civ. P. Having said that, however, Appellee does not concede that the Motion to Intervene was timely under a Rule 24 analysis and instead submits that it should be denied as untimely. "In determining

whether a motion to intervene is timely, courts consider four factors: (1) the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest; (3) the extent of prejudice to the proposed intervenor if the motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that their motion was timely. *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1259 (11th Cir. 2002)." *Bernath v. Seavey*, 2016 WL 1732626, at *3 (M.D. Fla. May 2, 2016).

Each of these factors weighs heavily against intervention in this instance. Appellant is one of the movants and commenced the underlying adversary proceeding to begin with. The Adversary Complaint was filed on or about December 14, 2018. Her mother, movant Ms. Nazarova, has likewise known about these proceedings from the beginning, if not well before the adversary was ever commenced. The Land Trust is allegedly managed by Appellant's limited liability company, Trust Management, LLC, and therefore cannot credibly argue it had no knowledge of the underlying proceedings or this appeal. Appellee, on the other hand, has been litigating with Appellant for several years, only culminating in the adversary proceeding and now this appeal. The adversary proceeding itself was pending for over a year before Appellee filed its Motion for Summary Judgment, and another two and a half months passed before the Court entered its Order granting the summary judgment motion. At *no time* during those many months did Movants ever seek to intervene in the adversary proceeding to allege that each had some interest in the Property that was not being adequately represented. Given the passage of time that has occurred in the proceedings, all of the arguments made below, and the significant expense that Appellee has already incurred battling each and every effort Appellant has made to defeat and/or avoid Appellee's lien against the Property, Appellee will be severely prejudiced if Movants are permitted

to join this action at this late stage. Meanwhile, Movants have not demonstrated any prejudice to them if the Motion to Intervene is denied, as again, Appellant is already a party to this action and appears more than willing to transfer interests to and from the Land Trust as she sees fit, regardless of the consequences.

With regard to the second *Chiles* factor, "[i]n determining sufficiency of interest, the Eleventh Circuit has held that ''the intervenor must be at least a real party in interest in the transaction which is the subject of the proceeding. This interest has also been described as a direct, substantial, legally protectable interest in the proceedings.'' *Purcell*, 85 F.3d at 1512 (citing *Worlds v. Department of Health and Rehabilitative Serv.*, 929 F.2d 591, 594 (11th Cir. 1991)). 'A legally protectable interest is something more than an economic interest[;]' rather, the interest must 'be one which substantive law recognizes as belonging to or being owned by the applicant.' *Mt. Hawley Insurance Company v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (emphasis in original)." *Bernath v. Seavey*, 2016 WL 1732626, at *3 (M.D. Fla. May 2, 2016). As discussed above, the Bankruptcy Court determined long ago that Appellant was the owner of the Property. *See* Exhibit "B". Not only did Appellant advocate for such a finding, but she has capitalized on and utilized that holding where it suits her, including but not limited to the commencement of the adversary proceeding against Appellee. Moreover, there is no judicial finding that Ms. Nazarova has any valid interest in the Land Trust Agreement; she never claimed as much in Appellant's underlying bankruptcy case; and she has not claimed as much here because she did not file any Affidavit in support of the Motion to Intervene.

With regard to the third *Chiles* factor, there is no risk of impairment of Movants' supposed interest (which interest has not even been established and is not conceded) in this appeal. Appellant is already a party to this action, in which she seeks to reverse the Bankruptcy Court's

grant of summary judgment in Appellee's favor. Moreover, the same unrecorded documents (purported transfers of interest) have been designated by Appellant as part of the record on appeal.

With regard to the fourth factor – the adequacy of representation - the Eleventh Circuit held in *Chiles* that, "This court will presume that a proposed intervenor's interest is adequately represented when an existing party pursues the same ultimate objective as the party seeking intervention." *Id.* at 215. That is precisely the case in the instant action, rendering the intervention unnecessary and/or superfluous.

WHEREFORE Appellee, PNC BANK, N.A., respectfully requests that this Court enter an Order denying the Motion for Leave to Intervene, and for such other and further relief that this Court deems just and proper.

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME REQUIREMENTS**

In accordance with Rules 8013(f)(3)(A) and 8015(h), Bankr. R. Civ. P., this Response complies with the requirements therein in that this Response contains 4,878 words.

Dated: August 10, 2020
Jacksonville, Florida

**McGLINCHEY STAFFORD**

By: */s/ Kimberly Held Israel*
Kimberly Held Israel
Florida Bar No. 47287
10407 Centurion Parkway North, Ste. 200
Jacksonville, FL 32256
Phone: (904) 224-4449
Fax: (904) 485-8083
Primary E-mail: kisrael@mcglinchey.com
Secondary: jglus@mcglinchey.com
***Attorneys for Appellee, PNC BANK, N.A.***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Appellee's Response in Opposition to Motion for Leave to Intervene and Memorandum of Law has been served, via CM/ECF, this **10th** day of **August, 2020**, on **Lilia Belkova**, drliliabelkova@gmail.com, *Appellant*; and **Joel Aresty, Esq.**, aresty@mac.com, *Attorney for Movants*.

/s/ *Kimberly Held Israel*
ATTORNEY