UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO. 5:20-cv-000143-BJD

LILIA BELKOVA
Appellant

v.

PNC BANK, N.A.
Appellee

_____________/

**CORRECTED INITIAL BRIEF OF APPELLANT**

Oral Argument Requested

LILIA BELKOVA
Appellant pro se
2251 Buck Ridge Trl
Loxahatchee, FL 33470
Phone: (561) 800-9596
DrLiliaBelkova@gmail.com

Table of Contents

Page

Table of Cases, Statutes and Authorities.............................................. i

Jurisdictional Statement...................................................................1

A. The Basis for Bankruptcy Court's Jurisdiction Over Belkova's Claim...........................................................................1

B. Bankruptcy Court Lacks Subject Matter Jurisdiction Over the Counterclaims ............................................................1

C. The basis for the district court or BAP's jurisdiction........................1

D. The filing dates establish the timeliness of the appeal......................1

E. This appeal is from a final order and final judgement.......................1

Statement of the Issues Presented for Review and Summary of the Argument.................................................................1

Applicable Standard of Appellate Review................................................4

Statement of the Facts & Statement of the Case.......................................4

Argument ..........................................................................11

I. The Bankruptcy Court lacked subject matter jurisdiction to impose lien on non-estate property..............................................11

II. Bankruptcy Court Lacked Jurisdiction Over Appellee's Counterclaims....14

III. Bankruptcy Court Had no Authority to Enter Final Orders or Judgment..16

IV. An Equitable Lien Should not be Impressed upon the Property where Person who Sought to Create the Lien in the first Instance had no Legal Authority to do so ..........................17

V. Imposition of an Equitable Lien on Homestead was Error......................19

VI. Genuine Issues of Material Fact Should Have Prevented Summary Judgment as a Matter of Law..........................................................20

3. Appellee's Evidence in Support of Summary Judgment Motion Should Have Been Excluded for Violation of Rule 26(a).........................................49

VI. Appellant was Denied Due Process.........................................53

VII. Appellee's Motion for Summary Judgment Was Not Timely Filed Pursuant to Florida Middle District Local Rule7001-1 .............................61

Appellee's Motion for Summary Judgment exceeded the Page Limit Rules..... 62

Conclusion..........................................................................30

Request For Oral Argument........................................................31

## TABLE OF AUTHORITIES

### Cases

Bank Leumi Trust Co. v. Lang, 898 F. Supp. 883, 888-89 (S.D. Fla. 1995)....................20

*Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991)................25

Boone v. Community Bank of Homestead ( =In re Boone), 52 F.3d 958 (11th Cir. 1995)....................16

*Cady v. Bush*, 283 Minn. 105, 166 N.W.2d 358 (1969)..............................25

Celotex Corp v. Edwards, 514 U.S. 300, 308 n.6 (1995)............................2

Citizens Bank of Northern Kentucky, Inc. v. PBNK, Inc., No. 2004-CA-001351-MR (KY 2/17/2006) (KY, 2006) ....................16, 17

Climate Control Engineers, Inc. v. Southern Landmark, Inc. ( In re Climate Control Engineers, Inc.), 51 B.R. 359, 361 (Bankr.M.D.Fla. 1985)....................17

Dameron, 155 F.3d 718 (4th Cir. 1998)....................13

Dewing v. Davis, 117 So. 2d 747, 750 (Fla.Dist.Ct.App. 1960) (citing Jones v. Carpenter, 106 So. 127, 129 (Fla. 1925)); In re Aloisi, 261 B.R. 504, 509-10

(Bankr. M.D. Fla. 2001))..............................................................23

Diamond S Dev. Corp. v. Mercantile Bank, 989 So.2d 696, 697 (Fla. 1st DCA 2008 ..............................................................23

DirecTV, Inc v. Deerey (In re Deerey), 2007 Bankr. LEXIS 2300 at * 23-23 (Bankr. M.D. Fla. 2007)..............19

Dowling v. Davis, 2006 U.S. Dist. LEXIS 55541, at *9 (M.D. Fla. 2006)..........19

*Engelbrecht v. Prop. Developers, Inc.*, 156 Ind.App. 354, 296 N.E.2d 798, 801 (1973)..............................................................25

First State Bank of Wykoff v. Grell (In re Grell), 83 B.R. 652, 657 (Bankr.D.Minn. 1988)........................................................17

Gallucci v. Grant ( In re Gallucci), 931 F.2d 738, 742 (11th Cir. 1991)..........17

In Re Grocki, 147 B.R. 274, 278 (Bankr. S.D. Fla. 1992) ............. 19

In Re Guild Gallery Plus, Inc. 72 F.3d at 1179 (3rd Cir. 1996)............................17

*In Re Hall 's Motor Transit Co.*, 889 F.2d 520, 522 (3d Cir. 1989)..........................................................................12

Havoco of America, Ltd. v. Hill, 790 So.2d 1018 (Fla. 2001).................19

Isaacson v. Isaacson, 504 So. 2d 1309, 1310 (Fla.Dist.Ct.App. 1987)............19

*J.H. Inv. Services, Inc.*, 413 Fed.Appx. 142, 148 (11th Cir. 2011).............11, 12

*Kern v. City of Lawrenceburg*, 625 N.E.2d 1326, 1329 (Ind.Ct.App. 1993).......25, 26

*King v. Terry*, 805 N.E.2d 397, 400 (Ind.Ct.App. 2004).................25

Lacy v. FDIC ( In re Lacy), 183 B.R. 890, 893 (Bankr.D.Colo. 1995).................17

*Lloyd's London v. Osting-Schwinn,* 613 F.3d 1079, 1092 (11th Cir. 2010).......11

Lubin v. Klein, 193 A.2d 46 (Md. 1963)................................16

Merch. Contrs. Capital Corp. v. Crum (In re Crum), 294 B.R. 402, 405 (Bankr. M.D. Fla. 2003) ..........................20

Miller v. Kemira, Inc. ( In re Lemco Gypsum, Inc.), 910 F.2d 784 (11th Cir. 1990).........................................................................................................14

*Musser v. Gentiva Health Services,* 356 F.3d 751, 755 & 758 (7th Cir. 2004)...................................................30

*Nat'l Fire Ins. Co. of Hartford v. Fortune Constr. Co., 320 F.3d 1260, 1267 (11th Cir. 2003*..............................................*4*

In Re Orlando TOLEDO and Maria Toledo, Debtors. Continental National Bank of Miami, a national banking corporation, Plaintiff-Appellant, v. Carmen Sanchez, Defendant-Appellee, 170 F.3d 1340 (11th Cir. 1999).............................14

Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984).......................................14

Palm Beach Sav. & Loan Ass'n, F.S.A. v. Fishbein, 619 So.2d 267, 270 (Fla. 1993..........................................................................19

In re Popek, 188 B.R. 701, 703 (Bankr. S.D. Fla. 1995)..................................20

*Salgado v. General Motors Corp.,* 150 F.3d 735, 742 (7th Cir. 1998) ..................................................................................30

Sears v. U.S. Trustee (In re AFY, Inc.), 734 F.3d 810, 816 (8th Cir. 2013).........1

Speciality Mills, Inc. v. Citizens State Bank, 51 F.3d 770, 773 (8th Cir. 1995)..........................................................................................1

*Syngenta Crop Protection, LLC v. Willowood LLC* et.al., 1:15-cv-274, Memorandum Opinion and Order (Middle District NC August 2, 2017)..............................................................30

*Underwriters at Lloyd's, London v. Osting-Schwinn,* 613 F.3d 1079, 1092 (11th Cir. 2010)..........................................................................................11

In Re Unicorn Computer Corp., 13 F.3d 321 (9th Cir. 1994)..................................9

United States v. Corrick, 298 U.S. 435, 440 (1936)........................................1

*1552(S.D.Fla.1989*...................................................

**Constitution**

Article III, US Constitution.....................................................2

**Statutes**

11 U.S.C. §522.........................................................................12

11 U.S.C. §541...................................................................12, 16, 17

11 U.S.C. 544..........................................................................11

28 U.S.C. §157.....................................................1, 2, 13, 14, 16, 17

28 U.S.C. § 158(a)....................................................................................1

28 U.S.C. § 1334................................................................................1, 14, 16

**Other Authorities**

Fed.R.Bankr.P. 9033 ................................................................ 17

Fed. R. Civ. Proc. 13(a) ....................................13

Fed. R. Civ. Proc. 26 .......................3, 8, 26, 27, 28, 29

Fed. R.Civ. Proc. 37....................................3, 29

E. Scott Fruehwald, The Related to Subject Matter Jurisdiction of Bankruptcy Courts, 44 Drake L.Rev. 1, 7(1995)............................................................14

## JURISDICTIONAL STATEMENT

**(A). The basis for the Bankruptcy Court's Jurisdiction Over Belkova's Claim.**

The bankruptcy court had jurisdiction under 28 U.S.C. §§157(b) and 1334 over plaintiff's one count Adversary complaint, but not the counterclaims.

**(B). Bankruptcy Court Lacks Subject Matter Jurisdiction Over the Counterclaims .**

The issue of jurisdiction must be reviewed de novo. Speciality Mills, Inc., 51 F.3d at 773.

**(C). The basis for the district court's or BAP's jurisdiction.**

District courts have appellate authority over dispositive orders and judgments of the bankruptcy court. 28 U.S.C. § 158(a). This District Court has an independent obligation to examine it's own jurisdiction and that of the bankruptcy court. Speciality Mills, Inc. v. Citizens State Bank, 51 F.3d 770, 773 (8th Cir. 1995). "When a lower federal court lacks jurisdiction, the appellate court has 'jurisdiction on appeal, not on the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.' " Sears v. U.S. Trustee (In re AFY, Inc.), 734 F.3d 810, 816 (8th Cir. 2013) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 95 (1998) and United States v. Corrick, 298 U.S. 435, 440 (1936)).

**(D). The filing dates establishing the timeliness of the appeal**. This appeal was filed within 14 days of the order and final judgment under appeal.

**(E) This appeal is from a final order and final judgment** that disposes of all parties' claims.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW AND SUMMARY OF ARGUMENT

1. Did the bankruptcy court erre in assuming it had jurisdiction to enter judgment on PNC Bank's counterclaims, which are non-core, where subject matter jurisdiction was missing because the

property is not property of the bankruptcy estate, is owned by indispensable parties not joined in the bankruptcy and the counterclaims rest outside the statutory reach of "related to" jurisdiction because the outcome of the proceeding could not have had any conceivable effect on administration of the bankruptcy estate. Celotex Corp v. Edwards, 514 U.S. 300, 308 n.6 (1995).

2. Whether the Bankruptcy Court had the power under Article III of the Constitution to enter final order or judgment on PNC Bank's counterclaims that are non-core, involve state law claims that arise independently of the Bankruptcy Code and that are not part of the claims allowance process (28 U.S.C. section 157(b))

3. Whether the court erred in finding that the pleadings, together with the affidavits, depositions, and records showed that there was no genuine issue as to any material fact and AppelleeIs entitled to judgment as a matter of law, where Appellant raised defenses of waiver and the breach of contract andFraud in her Answer to Complaint supported by evidence in the Record.

4. Did the Court err in denying without prejudice the Plaintiff's Motion to Compel Production of Original Promissory Note and then granted summary judgment without proof of possession and ownership of original promissory note required to prove standing and held as undisputed fact that Belkova executed promissory note despite handwriting expert's report she produced proving that she did not sign it and that the writing on the note is not authored by her and Bank's prior statements in it's pleadings claiming that Hanratty as a borrower executed promissory note.

5. Whether the bankruptcy court erred in finding as undisputed that after paying off Mackinac Savings Bank's mortgage lien, the remainder of the construction loan proceeds "were used to construct improvements buildings on the property" while construction loan agreement documents and other evidence in the records show that the Bank's assertion is false as evidenced by construction contract and the loan account statement (R-106), (R-32 at p. 27) that after paying

$ 25,000 to Hanratty thru closing the Lender had paid the rest of the funds into a fiduciary account for the borrower and misappropriated the borrower's funds and that Belkova received no funds and was not enriched by the Loan disbursement.

6. Whether the bankruptcy court erred in not dismissing counterclaims for failure to join indispensable parties and/or for lack of subject matter jurisdiction.

7. Did bankruptcy court err by not ruling on debtor's Emergency Motion to Continue Discovery and Trial to Quash Service of Summary Judgment Motion And Motion for Sanctions Against Defendant for Failure to Comply With Rule 26(a) where the debtor attached evidence that her due process rights were violated, that she was not served with the motion for summary judgment and was not given appropriate time to adequately respond and that the Appellee concealed the evidence (undisclosed electronic records) which were supposed to have been disclosed and contain evidence of material facts (Existence of material breach of express contract terms by the Lender and financial records) which would have proved her case against the Appellee. (Record # 146).

8. Did The Court Err by failing to follow F.R.C.P 37(3)(A) and by entering Judgement in violation of Appellants due process rights without service of SJM and without opportunity to properly present evidence including loan records the bank was obligated to produce without request.

9. The bankruptcy court erred in not considering all of appellants' exhibits in support of her response to summary judgment motion which she submitted to the clerk of court together with her response but which were docketed separately mixed up and days apart from the Response when considering Motion for Summary Judgment.

10. Appellee's claim for equitable lien and equitable subrogation is not warranted and they are unjustly enriched by the summary judgment entered by bankruptcy court.

11. Appellee's counterclaims against Belkova are barred by the statute of limitations, waived By not objecting to discharge in chapter 7 in 2011 and waived again inChapter 12 in 2013 and is res judicata after May 2017 Conformation of Plan, reserving only debtor's rights to sue PNC Bank "for validity of the mortgage and breach of contract.

12. Appellee is not entitled to demand equitable remedy due to unclean hands, Concealment of documents, alteration of documents after execution, engaging in bankruptcy fraud by submitting Fraudulent proofs of claims to induce payments of money not owed to it.

13. Whether bankruptcy court erred in failing to grant Summary Judgement in favor of Appellant declaring the Mortgage invalid.

It is Appellant's contention and a summary of argument that Bankruptcy Court erred in it's consideration of all of the above issues.

**APPLICABLE STANDARD OF APPELLATE REVIEW.**

The standard of review on whether the Bankruptcy Court properly granted a motion for summary judgment is de novo. Nat'l Fire Ins. Co. of Hartford v. Fortune Constr. Co., 320 F.3d 1260, 1267 (11th Cir. 2003). This court must finally decide this matter de novo based on its own review of the record (and without giving any deference to the Bankruptcy Court's recommendations.

**STATEMENT OF FACTS & STATEMENT OF THE CASE**

In the year 2003 Anissa Nazarova ("Nazarova"), living in England had wired approximately $115,000 down payment deposit to the realtor in Florida for the purchase of 5 acres of land. (R-68, at p. 3 paragraph 10) The funds came from the sale of her real estate in England as evidenced by the documents in Belkova's trial Exhibit 1 ( R-23, at p. 2). Nazarova executed a Specific Power of Attorney for her daughter Lilia Belkova ("Belkova") to sign any and all

documents on her behalf to facilitate her purchase of the property in Deer Run equestrian community (Declaration in Response to SJM R-68 at p. 3, #8).

Nazarova, an equestrian enthusiast and a retired university professor, by that time had already exported her russian horses from England to Florida in anticipation of sale of her real property in England and was planning to continue breeding, raising and training horses in Florida with the help of Belkova in her old age. The plan was that once Belkova becomes a US citizen she will then obtain a green card for her mother to move to Florida. Unfortunately Belkova had to file for divorce from her US citizen husband. She obtained a restraining order against him and left her home in Levy County with all of her mother's horses looking for a safe location where she could hide herself and the horses from being found by him. For that reason the property in Deer Run community was being purchased by her mother in a Land Trust to keep Nazarova's name off the public record and her horses and daughter safe pending divorce in Levy County. Attorney Joseph Hanratty ("Hanratty") was Belkova's then boyfriend and offered to serve as the initial trustee during acquisition of the property. Nazarova wanted to build horse stables and the plans were submitted to the architectural review committee of Deer Run Property Owners Association ("HOA") for the stables and a house since building the outbuildings without a house was not permitted by HOA documents. Unfotunately Belkova encountered hostility and discrimination from people in control of the HOA due to her national origin and HOA unlawfully avoided giving approval and demanded that the Trust provide sealed architectural construction plans for review which were not required and were not requested from other members of the community, in addition HOA demanded that the size of the house be double of what was legally required in order to review plans for construction of stables. To obtain the sealed drawings Hanratty had to put a 10% deposit on a house construction contract with JPG Enterprises, Inc. (approx. $25,000)

which he stood to lose if the closing on a construction loan didn't happen on time. However by the end of 2004 after the Trust met all of the HOA's unlawful demands, POA categorically refused to approve the construction of the stables and had not approved the house plan.

While Nazarova with the help of Belkova as a personal guarantor secured loan commitments from PNC Bank's predecessor for the construction of desired horse stables and a larger than desired house the Loan Commitment was conditional on HOA's approval of building plans.(R-27 pages 10-11). Absent approval of construction of Horse Stables, Nazarova had also secured a second loan commitment with Bank of America (loan commitment (R-26 at p. 9) for the construction of only a house in order to build a house of minimum required 1500 sq. feet size, failing an approval of Stables construction by HOA.

In the deposition Belkova also testified ( and produced in evidence at deposition original notarized assignment of beneficial interest which became Exhibit to deposition) that Nazarova was the sole beneficiary of the Trust at the time Hanratty signed the mortgage without her knowledge and consent, Nazarova did not want any construction on her property without express approval from HOA ( R-86 at p. 270-272) "In fact Anissa Nazarova was not willing to go ahead with construction and borrow funds from PNC unless formal approval from homeowner's Association for the construction of Horse Stables was obtained...As successor trustee of the trust and a cosigner for the trust in my individual capacity I have qualified on the basis of my creditworthiness and secured for the Trust loan commitment with two different banks" (R-86 at p 222 li17-25). Bank of America was a backup plan for construction of the house only, if the plans for the Horse Stables will not receive formal approval from Deer Run Homeowners Association.(R 68 at p. 6).

As a result of the unauthorized loan closing and construction funds disbursement Hanratty

received reimbursement of his $25,000 deposit which he otherwise would have lost to JPG Enterprises Inc. as evidenced by closing statement (Settlement statement R-27 at p. 24-25) and Belkova's Deposition ( R-86 at p. 259-260)

In her declaration Belkova testifies from her personal knowledge that the conditions for the real estate closing were not met, HOA has not given approval for construction of neither the house nor horse stables. The anticipated date of closing January 14, 2005 has passed and she had left Florida next day and she was not aware that Hanratty had executed an unauthorized mortgage on January 18, 2005.( R-68 at p. 8).

What is important however is that there was an express contract between Belkova and PNC Bank's predecessor signed at the Bank's office in advance of an anticipated loan closing and held in escrow by the Bank. That contract contains Construction Loan Agreement, referred to in the recorded Mortgage in paragraph 26:

"All of the terms, covenants and conditions of said construction loan agreement shall be and are herewith made a part of this mortgage as though set forth at length herein, and the breach of any of the terms, covenants and conditions in said construction loan agreement constitute a breach of this mortgage"(R-145 at p. 38).

Belkova's knowledge of English in 2005 was insufficient to read and fully understand the long and complex documents she was requested to sign by the Bank's representative and she relied on his quick explanations of the content and meaning of the documents provided by PNC Bank predecessor's employee. Belkova was not given a copy of the construction loan contract she had signed and only after the Summary Judgement she was able to get a complete copy and read and understand things she did not know before. She discovered that there was a Loan in Process account held by the Bank and owned by the borrower and that the Bank had mishandled that

account and even converted $ 25,000.00. Bank avoided production of the Contract all these years in all Court proceedings. On November 6, 2019 Bank's lawyer falsely told her at deposition that they do not have a copy of Construction Loan Agreement (R-86 at p.240 lines 15-24).

PNC Bank had concealed that it had a copy of construction loan agreement documents evidencing PNC Bank predecessor's total material breaches of contract's express terms, had not disclosed under Rule 26(a) possession of it's predecessor's electronic records intentionally preventing Appellant from using it in her defense of SJM as evidence that PNC Bank was not entitled to equitable lien because express construct exists, which Bank breached. Then Because the Court had not yet ruled on SJM, on 01/27/2020 PNC Bank included incomplete construction loan agreement as Exhibit # 24 of 60 Trial exhibits filed 7 days before trial scheduled for 02/03/2020 ( R-108 at p.1-9 )

Construction loan agreement states that "...the Commitment, Note and Mortgage, Disbursement schedule and other loan closing documents each of which documents are incorporated herein by reference. In the event of a conflict between this agreement and the Commitment, Note or Mortgage, the terms and conditions of this agreement shall govern and control unless otherwise provided herein" (R-108 at p.4 (m)). It states in ARTICLE III "DEPOSIT FUNDS "and paragraph (k) of ARTICLE VII that the construction funds of the owner in the amount of $375,298.80 shall be credited to the Loan in Process account maintained by the lender where the lender may commingle it with other monies held by the lender pending the actual disbursement on behalf of the owner. In ARTICLE IV "DISBURSEMENT ALL FUNDS" in paragraph (g) it stated that "the sole obligation of the Lender shall be to disperse funds as set forth herein..." Construction loan agreement documents mandate that owner's funds held by the lender in a Loan in Process account will be disbursed in accordance with Disbursement Schedule A ( R-27 at p.22) and Construction

Loan Disbursement Procedures which together describe that in accordance with the loan commitment prior to the first draw, at least 24 hours before the first draw funds are to be disbursed, survey must be certified to Fidelity federal Bank and trust, the title underwriter, the title company and the Borrower indicating "proof of compliance with deed restrictions or other documents affecting the property" In accordance with Loan Commitment requiring as its condition number 12 "compliance with any deed restrictions that may be required. If an approval is required by an architectural review committee, an approved set of plans will be required prior to closing."( Record # 27)

In accordance with Amortization Provisions of construction loan agreement PNC Bank's predecessor absent HOA's architectural review committee's approval of construction survey was supposed to credit the owner's construction funds held in Loan in the Process account to the principal balance of the loan. The lender had disbursed owner's funds, it held as a fiduciary to the contractors, in breach of construction loan agreement.

The construction contracts executed by Hanratty as trustee with builders for construction of stables and the house were contingent on the loan financing and absent HOA approval there were supposed to be no financing and no construction. By starting unauthorized construction by means of unauthorised disbursement of Borrower's funds from Loan in Process Account, PNC Bank's predecessor interfere with contractual relationship with HOA and caused a lawsuit by HOA against the Trust, which threatened Nazarova's property ownership because covenants and restrictions allow HOA to get a lien for attorney's fees and demolition costs as a prevailing party in the lawsuit on the alleged violations of covenants and restrictions and to foreclose on the property. To mitigate the damages caused by the lender's unauthorized disbursement of construction funds Belkova had advanced $170,000 for attorney's fees to defend the HOA's

lawsuit.(Trial Exhibits 37 & 38, comprised of paid legal fees ( Record # 43 ). The Bank had wasted most of the $150,000 loan in process funds it disbursed to the builder for the stables construction because HOA interfered with the construction and threatened the builder and caused him to walk away from the unfinished structure and construction materials lying around, which deteriorated under the weather without a cover and the structure had to be substantially demolished and rebuild by Belkova at her own expense of $80,000.( Record # 68 )

Despite suffering such extra expenses and damages caused by the lender's material breach of contract the Trust performed under construction contract without any default.

In May 2007 certificate of occupancy was issued on the house ( R-54 at p. 2) and the last draw was due to JPG Enterprises Inc. from the Trust funds held by the lender in fiduciary capacity. PNC Bank's predecessor again breached terms of construction loan agreement by failing to disburse the last draw of approximately $25,000 to neither the builder nor the owner.

On November 1, 2007 JPG Enterprises Inc. had recorded its Claim of Lien against Nazarova's property but the Lender had ignored demands for release of the owner's funds it held as a fiduciary in a Loan in Process account.

In July 2008 Belkova discontinued payments to the lender due to lender's failure to cure the material breach of contract which now was causing a second lawsuit to defend. The Lender's material breach of construction loan agreement was threatening Nazarova's property ownership. October 31, 2008 JPG Enterprises had filed its complaint to foreclose on the Construction Lien for the amount of $23,983.00. ( R-163 at p. 19).

In 2009 PNC Bank's predecessor had filed an unverified complaint for foreclosure. Shortly thereafter Nazarova transferred her beneficial interest in the Land Trust from her alone to herself and Belkova "as joint tenants with the right of survivorship" in lieu of repayment of Belkova's

$250,000 advance (which came from Belkova's savings and the sale of the land which she owned free and clear), to secure Belkova's continued help and investment of time and money in saving Nazarova from complete loss of her property due to the title impairment and lawsuits caused by the Bank. Belkova hired a lawyer to defend the forcclosures by the builder and the Bank. Financial strain of litigation devastated family farm business, precluded finishing building the horse training facility on the property and in 2011 Belkova filed for Chapter 7 bankruptcy. She had listed PNC Bank in her schedule F- "creditors holding unsecured claims" and described the unsecured claim as follows: "approx. 2005 alleged construction loan/contract cosigner. Contingent, unliquidated, disputed amount 650,000 or less"( R-70 at p. 24) The disputed claim was discharged in 2012 without PNC Bank's objection.

In November 2013 Belkova filed her Chapter 12 farmer's reorganization bankruptcy and after the Plan was confirmed in May 2017, in 2018, she initiated the instant adversary proceeding to declare PNC Bank's purported unauthorised mortgage invalid.

## ARGUMENT

**I. Bankruptcy court lacks subject matter jurisdiction to impose lien on non-estate property**.

The Court must determine for itself, and at all times during the action—whether or not raised by the parties—whether the Court has subject matter jurisdiction. In fact, even actions which might be otherwise "core," lack subject matter jurisdiction if it relates to non-estate assets. *See, e.g., In Re J.H. Inv. Services, Inc.*, 413 Fed.Appx. 142, 148 (11th Cir. 2011)(determining *sua sponte* that bankruptcy court lacked jurisdiction over Trustee's § 544(b) avoidance claim because property was not property of estate. Once the court determines it lacks subject matter jurisdiction, it is powerless to proceed. *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1092 (11th Cir. 2010). A bankruptcy court's jurisdiction cannot be assumed; it must be conferred by statute, *see,*

*e.g.*, *In re Hall 's Motor Transit Co.*, 889 F.2d 520, 522 (3d Cir. 1989). The Court's power to adjudicate the core proceeding depends on whether the property associated with the claim(s) is property of the estate. *See In Re J.H. Inv. Services, Inc.*, 413 Fed.Appx. 142 (11th Cir. 2011) ("JHIS") (bankruptcy court lacked subject matter jurisdiction over avoidance claim where property was not property of estate).

The filing of a bankruptcy petition creates an "estate" that includes all of the debtor's legal and equitable interests in property at the date of the petition. 11 U.S.C. §541. Title to the property remains property of the estate unless: (1) exempted by an individual debtor pursuant to 11 U.S.C. §522; (2) sold in accordance with the requirements of the Bankruptcy Code; (3) the bankruptcy court enters an order dismissing the bankruptcy; (4) the property is abandoned by court order or by action of the trustee; (5) the bankruptcy court allows a secured creditor to foreclose a lien on the debtor's property; or (6) title to the property re-vests in the debtor pursuant to a confirmed plan of reorganization. ( Numbers (1) and (6) apply in the instant case).

11 U.S.C. §541 (b)(1) : "Property of the estate does not include-- (1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor;" It has been established by the courts that real property held by a Land Trust is a non-estate property unless the debtor holds all of the beneficial interest in the Land Trust.

The real property, which Debtor holds as Trustee is a property outside the Estate to the extent of Nazarova's equitable interest in the real property. Property in which the debtor holds, as of the commencement of a case, only legal title and not an equitable interest, becomes property of the estate only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold. 11 U.S.C. 541(d). *See In re*

*Unicorn Computer Corp., 13 F.3d 321 (9th Cir. 1994); In re Dameron, 155 F.3d 718 (4th Cir. 1998).*

It is undisputed and PNC Bank admitted in it's summary judgment motion: "On December 13, 2013, Belkova filed her Schedules in the main case, in which she listed the Property by description in her handwriting on Schedule A, e.g. "Palm Beach County 5 acre farm". She described the nature of her interest in the Property "As Trustee of Florida Land Trust 072003 and some beneficial interest — jointly with mother." (D.E. 18 at p. 2 in the main case). Belkova identified her mother as Anissa Nazarova. (D.E. 18 at p. 32)." (R-49 at p. 6 paragraph 14). .

. As Evidenced by Court Order attached to Debtor's declaration as Exhibit L (Record # 12) this adversary complaint was filed after confirmation of debtor's chapter 12 Plan and Confirmation Order revested all property of the estate in the debtor, ( only debtor's interest in the property not the interest of Nazarova, which never was a bankruptcy estate). The Property is also Belkova's homestead (R-68 at p. 12 ) and is exempt from the Estate under Florida and bankruptcy law.

Debtor's one count complaint to declare invalid ab initio unauthorized mortgage impairing the property, in which the debtor has an interest was a core proceeding pursuant to 28 U.S.C. section 157(b) and was preserved by the "Reservation of Rights" under confirmed chapter 12 Plan and was, in essence, a part of the claim allowance process conditional on validity of the mortgage.

While the subject matter of Appellant's claim was the invalidity of the defective unauthorised mortgage ab initio, impairing the property of the Land Trust, in which the debtor has an interest, the subject matter of the counterclaims became the real property itself which was a non-estate property. Appellee's counterclaims did not comply with Federal Rules of Civil Procedure Rule 13(a) because the claim: (A) must "arise out of the transaction or occurrence that is the subject matter of the opposing party's claim"-- and it did not; and (B) that claim "does not require adding

other party over whom the court cannot acquire jurisdiction."-- and it does require addition of indispensable parties over whom the court cannot acquire jurisdiction: Nazarova as equitable co-owner of the real property and Lilia Belkova as Trustee of the Land Trust as legal title holder, who in her fiduciary capacity must be represented by an attorney. Such joinder is a must under Florida state law and the state law applies in the bankruptcy court proceedings over state court causes of action.

**II. Bankruptcy Court Lacked Jurisdiction Over Appellee's Counterclaims**

Appellant contends that PNC Bank's counterclaims for equitable lien on the real property owned by the Land Trust were not related to Belkova's underlying bankruptcy case and had no effect on the administration of the bankruptcy estate in her Chapter 12 case and therefore lacks the "related to" connection has been described as "the minimum for bankruptcy jurisdiction." E. Scott Fruehwald, The Related to Subject Matter Jurisdiction of Bankruptcy Courts, 44 Drake L.Rev. 1, 7 (1995). United States Court of Appeal for the 11th circuit in *In re: Orlando TOLEDO and Maria Toledo, Debtors. Continental National Bank of Miami, a national banking corporation, Plaintiff-Appellant, v. Carmen Sanchez, Defendant-Appellee, 170 F.3d 1340* ( 11th Cir. 1999) gives following explanation on bankruptcy court's jurisdiction: "Although whether something is a core proceeding is analytically separate from whether there is jurisdiction, by definition all core proceedings are within the bankruptcy court's jurisdiction. Core proceedings are defined in 28 U.S.C. § 157(b)(1) as "proceedings arising under title 11, or arising in a case under title 11," which is a subset of the cases over which jurisdiction is granted in § 1334(b) … Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F.2d 784 (11th Cir. 1990), is the seminal case in this Circuit on the scope of the bankruptcy court's "related to" jurisdiction. In Lemco Gypsum, this Court adopted the following liberal test from Pacor, Inc. v. Higgins, 743 F.2d 984

(3d Cir. 1984), for determining jurisdiction over an adversary proceeding: "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) **and** which in any way impacts upon the handling and administration of the bankrupt estate."'(emphasis added) In the instant case, determination of PNC Bank's counterclaims could not in any way impact upon the handling and administration of the bankrupt estate, because the instant adversary complaint was filed after the Court confirmed the Plan in May 2017 (Confirmation Order Doc. 393, in 3:13-bk-7570), which did not provide for payments to any unsecured creditors. Payments were provided to a total of three creditors, on in rem only claims, for which she was either never personally liable, or her alledged in personam liability was discharged in prior bankruptcy. That included the claim of PNC Bank (listed by debtor in her schedules as **unsecured, disputed and discharged** (R 49 paragraph 16) and on which the statute of limitation had already run prior to it's discharge in 2012 in chapter 7 bankruptcy. In 2013 Chapter 12 bankruptcy, the enforceability of PNC Bank's claim was conditional on the validity of purported mortgage under confirmed Plan's "Reservation of Rights" (Doc. 383 at 2, in 3:13-bk-7570). Therefore there is no connection with the estate in as much that resolution of the dispute over equitable lien claims does not affects whether PNC Bank whose mortgage is invalidated must look to other collateral or compete with general unsecured creditors to satisfy the unsecured debt because after the discharge of disputed in personam claim in prior chapter 7 in 2012, there was no unsecured debt owed to it and because there were no unsecured creditors under the confirmed Plan to administer

the Estate to.

Also by the order of confirmation of the Plan the estate's interest in the Land Trust's property has revested in the debtor to the extent of debtor's co-ownership of the beneficial interest and therefore regardless of the outcome resolution of the PNC Bank's counterclaims could not ultimately benefit the Estate and could have no conceivable effect on administration of the estate. (The presence or absence of jurisdiction must be evaluated based on the state of affairs existing at the time the adversary complaint was filed ( *Lemco Gypsum, 910 F.2d at 788 n. 20)*, which was after confirmation of the plan and prior to discharge). In that regard to the instant case is similar to *In Boone v. Community Bank of Homestead ( In re Boone), 52 F.3d 958 (11th Cir.* 1995) (per curiam), in which Eleventh Circuit Court of Appeal determined that the essential "related to" nexus under § 1334(b) was not present and that the bankruptcy court lacked jurisdiction over a lawsuit because any recovery in the lawsuit would not inure to the benefit of the estate. Id. at 960 (citing 11 U.S.C. § 541(a)). In the instant case also the property of the estate had already been revested in the debtor, therefore the outcome of the counterclaims will not impact the Estate.

**III. Bankruptcy Court Had no Authority to Enter Final Order or Judgment.**

PNC Bank's counterclaims were a non-core proceeding therefore the bankruptcy court could only submit proposed findings of fact and conclusions of law, not a final order or judgment, and the district court was obligated to conduct a de novo review of those matters to which Appellant objects. See 28 U.S.C. § 157(c)(1) ("In a non-core proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely

and specifically objected."); Fed.R.Bankr.P. 9033 (specifying the exact procedures to be followed by the district court in such cases).

28 U.S.C. § 157(b)(2)(K) indicates that it encompasses only proceedings to determine the validity, extent, or priority of liens on the estate's or the debtor's property. *First State Bank of Wykoff v. Grell ( In re Grell), 83 B.R. 652, 657 (Bankr.D.Minn. 1988); Climate Control Engineers, Inc. v. Southern Landmark, Inc. ( In re Climate Control Engineers, Inc.), 51 B.R. 359, 361 (Bankr.M.D.Fla. 1985).* "Otherwise, bankruptcy courts would be asserting a form of jurisdiction ferae naturae, capable of the adjudication of property rights wherever found and by whomever owned. Nor do any of the other types of core proceedings appearing in § 157(b)'s list fit the PNC Bank's counterclaims, especially in light of the fact that they are to be construed in light of the constitutional limitations that prompted their enactment. *Lacy v. FDIC ( In re Lacy), 183 B.R. 890, 893 (Bankr.D.Colo. 1995).* To the extent that the literal wording of some of the types of proceedings might conceivably seem to apply, it should be remembered that engrafted upon all of them is an overarching requirement that property of the estate under § 541 be involved. *Gallucci v. Grant ( In re Gallucci), 931 F.2d 738, 742 (11th Cir. 1991)* (noting that § 157(b)(2)(E) category for turnover actions applies only to orders to turn over property of the estate); *Guild Gallery Plus, 72 F.3d at 1179.* In the case at bar the real property is owned by the Land Trust, not by the Debtor individually. (11 U.S.C §§541(b)(1) and 541(d). .

Therefore PNC bank's counterclaims are based on the state-created common-law rights which could be enforced in a state court proceeding absent the bankruptcy, they did not utilize any process specially established by the Bankruptcy Court and are non-core.

**IV. An Equitable Lien Should not be Impressed upon the Property where Person who Sought to Create the Lien in the first Instance had no Legal Authority to do so and claim for unjust enrichment in such case is without merit.**

In *Citizens Bank of Northern Kentucky, Inc. v. PBNK, Inc., No. 2004-CA-001351-MR (KY 2/17/2006) (KY, 2006)* the Court affirmed the decision that lender with the mortgage signed by person without legal authority does not have a valid legal or equitable mortgage on the property and commented: "Kentucky has few cases addressing the doctrine of equitable mortgages. We have, however, located a sister-state case which is, by analogy, applicable to the situation at hand"" and then quoted Lubin v. Klein, 193 A.2d 46 (Md. 1963):

> " It is well settled in this State, since Dyson v. Simmons, 48 Md. 207 (1878), that generally where an instrument intended to operate as a mortgage fails as a legal mortgage because of some defect or infirmity in its execution, an equitable mortgage may be recognized, with priority over judgments subsequently obtained. See also Jackson v. County Trust Co., 176 Md. 505, 6 A.2d 380 (1939); Western Bank v. Union Bank, 91 Md. 613, 46 A. 960 (1900); cf. Berman v. Berman, 193 Md. 614, 69 A.2d 271 (1949). The theory underlying the equitable mortgage doctrine is that an instrument which is intended to charge certain lands, even though defectively executed, is nevertheless considered to be evidence of an agreement to convey, and a court of equity should enforce the obligation despite the technical defects in the instrument.
>
> The case before us is not one, however, where the defect complained of occurred in the mortgage itself. It occurred rather in the document which sought to invest the attorney-in-fact with power to execute the mortgage. The reasoning in Jackson v. County Trust Co., supra, recognizes power to convey or charge the land as a condition precedent to the invocation of the equitable mortgage doctrine. In that case, in which a mortgage executed without an affidavit of consideration was held to be an equitable mortgage and given priority over a subsequent judgment lien, the Court quoted from Dyson v. Simmons, supra (at p. 510 of 176 Md.):
>
> "* * * At the time of the execution of this mortgage the mortgagor had full and complete power of conveying or charging the land * * * and the general principle is, that if a party has power to charge certain lands and agrees to charge them, in equity he has actually charged them; and a court of equity will enforce the charge. * * * (Emphasis supplied.)
>
> This language, when considered in conjunction with the case of Citizens' Fire Insurance etc. v. Doll, 35 Md. 89 (1872), leaves little doubt that the equitable mortgage doctrine must be limited to situations where the person who executed the mortgage had the legal power to do so, and cannot be extended to cure mortgages which have been executed by persons with no legal authority. "

The Court further addresses Unjust Enrichment issues under the circumstances of such case:

> "Finally, we address Citizens Bank's contention that PBNK has been unjustly enriched. Citizens Bank thinks this is so because at the time PBNK made its loan, it well knew of the Citizens Bank loan and considered its loan subordinate. We know of no rule of law that dictates that a subordinate lienholder enhanced by the failure of a prior lien, or for that matter the cancellation or retirement of same, is to be considered unjustly enriched. A serendipity perhaps. But not an unjust gain to be condemned by the law.
> The doctrine of unjust enrichment, an equitable one, is applicable as a basis of restitution to prevent one person from keeping money or benefits belonging to another. Haeberle v. St. Paul Fire and Marine Ins. Co., 769 S.W.2d 64 (Ky.App. 1989). Because Citizens Bank does not have a valid legal or equitable mortgage on the subject property under which to assert a lien, it cannot claim that PBNK is depriving it of money or benefits. Citizens Bank's claim of unjust enrichment is thus without merit."(*Citizens Bank of Northern Kentucky, Inc. v. PBNK, Inc., No. 2004-CA-001351-MR (KY 2/17/2006) (KY, 2006)).*

**V. Imposition of Equitable Lien on Homestead Was in Error**

It is undisputed that the Property is Belkova's homestead (R 68 page 12 paragraph 36..)

The Florida Supreme Court has stated that an equitable lien may be imposed in limited circumstances where a debtor fraudulently procured funds to invest in, purchase, or improve a homestead. See Palm beach Savings Loan Assoc. v. Fishbein, 619 So. 2d. 267, 270 (Fla. 1993); Dowling v. Davis, 2006 U.S. Dist. LEXIS 55541, at *9 (M.D. Fla. 2006); Isaacson v. Isaacson, 504 So. 2d 1309, 1310 (Fla.Dist.Ct.App. 1987) (noting that "when an equitable lien is sought against homestead real property, some fraudulent or otherwise egregious act by the beneficiary of the homestead protection must be proven."); Havoco of Am., Ltd. v. Hill, *6 255 F.3d 1321, 1321 (11th Cir. 2001).

Bankruptcy Courts have traditionally turned to equitable liens in response to some fraudulent act by an individual when the fraudulent act related to the acquisition or improvement of the homestead. See In re Grocki, 147 B.R. 274, 278 (Bankr. S.D. Fla. 1992) (imposing an equitable lien on homestead where debtor used fraudulently obtained funds to pay down a mortgage); DirecTV, Inc v. Deerey (In re Deerey), 2007 Bankr. LEXIS 2300 at * 23-23 (Bankr. M.D. Fla.

2007) (refusing to impose an equitable lien with funds obtained from illegal activities unrelated to the improvement of the homestead); Merch. Contrs. Capital Corp. v. Crum (In re Crum), 294 B.R. 402, 405 (Bankr. M.D. Fla. 2003) (denying the imposition of an equitable lien where the fraudulent or egregious conduct could not be traced to the purchase of the homestead).

Based on these principles Bank's claim for an equitable lien is deficient. Bank failed to even plead that the Debtor acted in a fraudulent or otherwise egregious manner. There are no allegations that the Debtor undertook any egregious or fraudulent conduct. Accordingly, there is no basis for a finding that an equitable lien exists.

However, even if fraud or egregious conduct was found or is not required, Bank has failed to trace the funds of alleged loan of January 2005, when Belkova had no ownership interest in the property and was only a guarantor on the Construction Loan Contract ( none of the money were paid to her under the contract) into her current co-ownership of beneficial interest in Trust which she acquired in 2009 for $ 250,000 which she advanced to her mother to mitigate damages caused by the Bank's unauthorised construction and Bank's fraudulent attempt to deprive Nazarova of her property by unlawfully foreclosing on unauthorised invalid mortgage. (R 68 at p 10 paragraph 28.) $ 250,000 came from her sale of 5 acres of land owned free and clear and from her earnings and savings. In order to collect on an equitable lien the alleged lien holder must be able to trace the loaned funds into the home of the Debtor. See In re Popek, 188 B.R. 701, 703 (Bankr. S.D. Fla. 1995) (declining to impose an equitable lien partly based on the creditors inability of objecting creditor to show that money lent was used to obtain the homestead); accord Bank Leumi Trust Co. v. Lang, 898 F. Supp. 883, 888-89 (S.D. Fla. 1995). As such PNC has failed to meet the requirements for an equitable lien. .

**VI. Genuine Issues of Material Fact Should Have Prevented Summary Judgment as a Matter of Law:**

**1.** Court incorrectly stated as undisputed fact, that Belkova signed the "Promissory Note" and wrote on the Note "This document is not to he recorded", while the debtor not only denied signing the purported "Promissory Note" (Belkova's deposition, (R-86 at p.222-225 and at p. 250-253)), disputed authenticity of the alleged Promissory Note in her Motion to Compel Production of Original Promissory Note for Examination by Handwriting Expert, attaching evidence that the alleged copy of the " Promissory Note" **can not be** a true copy of the Note because it is missing the endorsement stamp which was present on the alleged copy of the same Note, attached to PNC Bank's Amended Complaint for Foreclosure in 2010 where PNC claimed that Hanratty was the borrower and that he executed the Promissory Note and it does appear to have his signatures on all pages containing terms of the loan (R-19) In addition, Belkova produced the Declaration of the handwriting expert, whose professional opinion is that handwritings "This document is not to be recorded" were authored not by Belkova. The Expert's Declaration is attached as exhibit F to her Declaration in Response to Summary Judgement Motion ( R 68 at p 4 and 7). ( the PNC Bank's Foreclosure Complaint where Bank claims that Promissory Note was executed by Joseph Hanratty is attached as exhibit to her Motion to Compel Production of Original Promissory Note. (R-19). The terms of the alleged Promissory Note are also completely inconsistent with history of payments as far as due dates and amounts due and contradict the terms of Construction Loan Agreement , loan statements in record and history of payments and even the Bank's Affidavits.

2. The bankruptcy court erred in concluding that "the money was loaned with the clear intent of all parties to be secured by a mortgage and this clear intent is recorded in the public records"( presumably "all parties" being Belkova since she is the one sued and did not have any powers to

secure anything on Nazarova's property without her consent.Court overlooked evidence of material breach of the express contract by the Lender, expressly obligated the Lender, holding borrower's Funds in Loan in Process fiduciary account, not to disburse any funds absent POA's written approval of construction project and absent the approval to apply the borrower's funds to the balance of the loan.

Plaintiffs' one count Adversary complaint to declare invalid a purported mortgage which was executed by purported trustee without grant of any powers to him by the Deed to the Property and without knowledge and consent of Anisa Nazarova ("Nazarova") the sole beneficiary of the Land Trust at the time of execution of such unauthorised invalid ab initio Mortgage ( January 2005). The Appellant did not own any interest in the property at that time. The alleged obligation of the Appellant was as a personal guarantor on anticipated construction loan. Appellant's liability was going to be in personam only and conditional on the lender's performance under the terms of Construction Loan Agreement documents, which terms were materially totally breached by the Lender and not by the Borrower. Appellant had disputed her liability under such contract due to material breach by PNC Bank's predecessors in interest in her prior chapter 7 bankruptcy and subsequently the alleged disputed conditional unliquidated claim of PNC Bank had been discharged in 2012. The alleged obligation stemmed from the events of 2005 the time when the Appellant had no legal and no equitable interest in her mother's property held by Joseph Hanratty as Trustee of Land Trust 072003 dated 02/09/2004 and she could not and did not grant any in rem rights over the real property owned by the trust, neither was it alleged that she granted any in rem rights to the Appelle's predecessor.

Because the Appellant subsequently in 2009 acquired for value ($ 250,000) from her mother joint beneficial interest in the Land Trust and also because since 2012 she held the legal title to

the property as successor trustee of Land Trust 072003, she had standing as the debtor in her chapter 12 bankruptcy to sue PNC Bank to declare the defective mortgage impairing her interest in the property invalid because the purported mortgage impaired the real property in which the estate had an interest prior to confirmation of the Plan and the Plan's "Reservation of Rights" made allowance of PNC Bank's claim as "secured" conditional on the validity of the purported mortgage and reserved the right to sue PNC for validity of the mortgage and for breach of contract. There is no in rem claim against Belkova surviving the Chapter 7 discharge, because belkova did not own the property. If the mortgage is unauthorised there cannot be an equitable lien against Belkova. PNC waived all claims against her in two bankruptcies after statute of limitation already run anyway.

In Florida an equitable lien may be "founded upon two bases: (1) a written contract that indicates an intention to charge a particular property with a debt or obligation; or (2) a declaration by a court out of general considerations of right or justice as applied to the particular circumstances of a case." See Dewing v. Davis, 117 So. 2d 747, 750 (Fla.Dist.Ct.App. 1960) (citing Jones v. Carpenter, 106 So. 127, 129 (Fla. 1925)); In re Aloisi, 261 B.R. 504, 509-10 (Bankr. M.D. Fla. 2001). It is without question that no written contract between Belkova and the Bank upon which to impose an equitable lien exists in this case. Therefore, any claim that PNC may have must fit into the second justification, namely, that the circumstances of the case require the imposition of an equitable lien.

**The Existence of an Express Contract Breached by Appellee Negates an Action Under Unjust Enrichment Theory**

The existence of an express contract negates an action under an unjust enrichment theory. Diamond S Dev. Corp. v. Mercantile Bank, 989 So.2d 696, 697 (Fla. 1st DCA 2008) (unjust

enrichment claim precluded by existence of express contract between parties concerning same subject matter). In the instant case the court erred in concluding that all parties agreed for the property to be encumbered by a mortgage, yet while it is disputed whether appellant signed the promissory note and agreed that she did not sign the mortgage both, the mortgage and the note are irrelevant to the controversy, because compliance with construction loan agreement was condition precedent to conversion of the construction phase into the permanent mortgage which never happened because the lender breached the terms of their construction contract.

Construction loan agreement, which PNC Bank produced only after summary judgment pleadings were done, evidences that PNC Bank's affidavit is false because per construction loan agreement all of $530,000 except for approximately $118,000 paid to Mackinac Bank and $25,000 disbursed to Hanratty as per loan closing statement, the whole balance of the loan the bank paid to themselves into their Loan in Process fiduciary account and held in the name of borrower and then in violation of the terms of construction loan agreement and, despite protests of appellant, initiated construction unauthorized by HOA by direct payments to the builder's and to the detriment of the Appellant and Nazarova, the property owner. It is evidenced by combined examination of : Loan account statement for year 2009 (R-32 at p.27); Disbursement Schedule A ( R27 at p. 22): and JPG Enterprises Inc. complaint to foreclose a construction lien on the Property (R-163 at p. 19)

that after construction of the house was completed the payments on the loan were current, yet the Lender failed to disperse $25,000 of the borrower's funds held by the Bank in a fiduciary capacity. The Bank did not pay the builder and did not pay the owner and after the builder filed a claim of lien and started foreclosure the bank have neither disbursed the funds nor credited it back to the balance of the loan but instead converted it to it's own. At the time the principal balance as it states on the statement was $506,000 ( construction loan statement for 2009, R-32 at p.27) and

the bank never disbursed any more funds, yet in the affidavit attached to SJM the principal balance owed is stated $514,000 while promissory note states $530,000.

The lender is not entitled to equitable lien and equitable subrogation against the Appellant where its conduct was officious and caused damages and where express contract existed which the Appellee totally materially breached , and where no beneath was conferred on the Appellant.

First, equitable relief cannot be granted where the rights of the parties are governed by a valid contract. See Cady v. Bush, 283 Minn. 105, 166 N.W.2d 358 (1969).

Quantum meruit's origin predates the merger of the courts of chancery and law. *King*, 805 N.E.2d at 400. Consequently, a *contract* precludes application of quantum meruit because: (1) a *contract* provides a remedy at law; and (2) as a remnant of chancery procedure, a plaintiff may not pursue an equitable remedy when there is a remedy at law. *Id.* More specifically, when the rights of parties are controlled by an express *contract*, recovery cannot be based upon a theory implied in law. 6 I.L.E. *Contracts* § 5 (2000); *see also Bayh*, 573 N.E.2d at 409; *Engelbrecht v. Prop. Developers, Inc.*, 156 Ind.App. 354, 296 N.E.2d 798, 801 (1973). Thus, the existence of a valid express *contract* for services precludes the implication of a *contract* covering the same subject matter. 6 I.L.E. *Contracts* § 5; *see also Kern v. City of Lawrenceburg*, 625 N.E.2d 1326, 1329 (Ind.Ct.App. 1993).

Here, PNC Bank's predecessor entered into an express *contract* for the construction of Horse Stables and a House contingent on Obtaining express written approval from POA due to property being subject to covenants and restrictions. Specifically, the Agreement provided that absent such approval, there will be no disbursement of the funds to the builder's and all construction funds shall be applied against the balance of the loan. And at the end of the construction phase they will

be a amortization of the loan before it goes into the permanent stage. Because there is a valid express *contract* for the construction of the improvements ,Appellee is precluded from recovering under the theory of quantum meruit. *See Kern*, 625 N.E.2d at 1329. Accordingly, the trial court's judgment on this point is clearly erroneous.

**APPELLANT WAS DENIED DUE PROCESS**

Appellee filed their Motion for Summary Judgment ("MSJ") on January 6, 2020. (Record # 49). The MSJ contained a Certificate of Service stating service was made to Appellant vis first class mail but did not contain an address for Appellant that the MSJ was allegedly mailed to.

The first page of the MSJ contains a Notice of Opportunity to Object and Request for Hearing (negative notice) pursuant to Local Rule 2002-4 and states that Appellant was required to file a response to the MSJ within 21 days "plus an additional three days for service if any was served by U.S. Mail", i.e. January 28, 2020, or the Court could rule on the MSJ without a hearing.

On January 7, 2020, the Clerk of Court filed a Notice Regarding Motion for Summary Judgment (Record # 66) stating that Appellant had 21 days from the date "stated in the motion's proof of service" to file her response to the MSJ.

On January 8, 2020, the Bankruptcy Court entered an Order Confirming Summary Judgment Briefing Schedule as Established in the Court's Scheduling Order (Doc. 67) (Record #67) that stated: "Pursuant to the Scheduling Order (Doc. 67, parag. 8) motions for summary judgment shall be filed not later than January 6, 2020. Responses shall be due no later than January 20, 2020. Replies, if any, shall be filed no later than January 27, 2020."

As described in Appellant's Emergency Motion to Continue Discovery and Trial, to Quash Service of Summary Judgment Motion and Motion for Sanctions Against Defendants for Failure to Comply with Rule 26(a) filed on January 29, 2020 (Record #73), Appellant had received a e-mail

notification of Electronic Filing of a document but due to technical fault with the Court's notification sistem the link never worked on her account in only this particular case. The problem persisted for a long time despite her efforts to get it fixed with the Court and Pacer as evidenced by emails attached to the Motion.

**Under the Rule 9036 Notice by Electronic Transmission:**

"... service or notice is complete upon filing or sending but **is not effective** if the filer or sender receives notice that it did not reach the person to be served."

Since Belkova was subscribed to free electronic notification she was not getting service by mail from the Court. So upon receipt of notification she had called Court Clerk to find out about the document filed and was told about SJM and that she had until January 29th to respond, she was also told that the copy was mailed to her by opposing counsel but there was no address on the certificate of service.

Appellee's counsel was aware of Appellant's inability to receive documents from the court electronically, so she had been sending pleadings to Appellant via email. Yet SJM was not sent to Appellant via email nor via U.S. Mail. In her response to Appellant's motion opposing council did not deny not mailing SJM to Appellant (Record # 78)

Appellant also received a Notice of Electronic Filing of the Clerk's Notice Regarding Motion for Summary Judgment but was again unable to obtain the pleading itself through the Notice or Pacer. Appellant being unable to obtain copies of the pleadings electronically and having not received anything via the US Mail (see Appellant's Emergency Motion to Continue Discovery and Trial, to Quash Service of Summary Judgment Motion and Motion for Sanctions Against Defendants for Failure to Comply with Rule 26(a) filed on January 29, 2020. (Record #73) and Exhibits D and F thereto (Record #74) which includes proof from the USPS that the MSJ was not delivered by US

Mail to Appellant between January 7 and January 21, 2020) traveled to the Court in Jacksonville and on January 14, 2020 was able to obtain copies of the MSJ, the Clerk's Notice and the Court's January 8, 2020 Order from the Clerk.

When Appellant finally received the MSJ and the Court's January 8, 2020 Order stating that her response to the MSJ that her response was due January 20, 2020, she effectively had 4 days to prepare and file her response to the MSJ since Appellant does not have access to law libraries on the weekends.

Appellant did not have sufficient time to properly prepare her response to the MSJ given the time limitation but did file her Declaration in Response to Defendant's Motion for Summary Judgment covering the issues she could on January 21, 2020 with supporting exhibits. (Record #s 38- 52) (Also see the first page of Response to Defendant's Motion for Summary Judgment stamped by the Clerk as filed on January 21, 2020.( R 38 at p. 1)

On January 29, 2020, Appellant filed her Emergency Motion to Continue Discovery and Trial, to Quash Service of Summary Judgment Motion and Motion for Sanctions Against Defendants for Failure to Comply with Rule 26(a) filed on January 29, 2020 with Exhibits (Record #s 146 and 147) along with her Certificate of Necessity of Request for Emergency Hearing (Record # 149).

The Court never ruled on Appellant's Emergency Motion but did enter an Order canceling the trial set for February 3, 2020 on January 30, 2020. (Record # 148) The Order states: "This adversary proceeding is considered on the Court's own initiative for entry of an appropriate order. Trial in the complaint is set for February 3, 2020, at 1:00 pm (Doc. 70). However the Court has recently received Defendant's Motion for Summary Judgment ( the "Motion") (Doc. 75), Debtor's Response (Doc. 81), and Defendant's Reply (Doc. 97). The Defendant's Motion is dispositive if granted. Alternatively, the Motion may narrow for the issues for trial." The Order goes on to Order that the

February 3, 2020 trial is canceled and the Court will take the pleadings under advisement and will address the need for future hearings and/or trial in its Order on the Motion.

Appellant never received the MSJ via US Mail notwithstanding Appellee certified to the Court that the MSJ was sent to Appellant via US Mail.

Appellant was denied due process of law because she did not receive proper service of the MSJ or of the Bankruptcy Court's January 8, 2020 Court Order regarding the deadline for response to the MSJ and did not timely receive the MSJ or the Court's Order.

**APPELLEE'S EVIDENCE IN SUPPORT OF SUMMARY JUDGEMENT MOTION SHOULD HAVE BEEN EXCLUDED FOR VIOLATION OF RULE 26(A).**

On April 4, 2019 the Appellee filed its DEFENDANT'S INITIAL DISCLOSURES (Record #7) The disclosures do not contain any electronic data disclosure. No subsequent disclosure of electronic data was filed.

As indicated in Appellant's Emergency Motion to Continue Discovery and Trial, to Quash Service of Summary Judgment Motion and Motion for Sanctions Against Defendants for Failure to Comply with Rule 26(a) filed on January 29, 2020. (Record #146), Appellee did not comply with Fed.R.Civ.P. 26(a) and did not provide Appellant with any electronic discovery.

However, Appellee submitted an Affidavit in Support of its MSJ by Sarah Greggerson where electronic data and records of Appellee were allegedly relied on as the basis of the Affidavit. (Record #54)

The Bankruptcy Court should have sanctioned Appellee for failing to provide full disclosure Pursuant to rule 37 F.R.C.P. and

Appellee's failure to disclose should have prevented Appellee from being able to rely on its business records/electronic data to support the MSJ. The Court erred in not granting Appellant's motion to continue Discovery.

The Federal Rules of Civil Procedure codify precedent to prevent trial by ambush. See *Musser v. Gentiva Health Services*, 356 F.3d 751, 755 & 758 (7th Cir. 2004) ("**The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless**.") Also see *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) and *Syngenta Crop Protection, LLC v. Willowood LLC* et.al., 1:15-cv-274, Memorandum Opinion and Order (Middle District NC August 2, 2017).

Admitting improper evidence is harmful and therefor reversible error of law.

## CONCLUSION

For the reasons stated above the Bankruptcy Court erred and the summary judgement in favor of appellee must be reversed. Summary Judgement should be granted for Appellant since there are no genuine issues of material fact which would prevent summary judgement declaring mortgage invalid.

## Request For Oral Argument

Appellant requests oral argument pursuant toLocal Rule 87.4(f)

Certificate of Compliance with Bankruptcy Rule 8015

I hereby certify that this Brief complies with Bankruptcy Rule 8015 and Fed. R. App. P. 32(a)(7)(B). This Appellant Brief contains less than 10,050 of allowed 13,000 words and is 30 pages using Times New Roman 12 point font, excluding the parts of the brief exempted by Federal Rule of Bankruptcy Procedure 8015(a)(7)(B)(iii).

Certificate of Service

I Hereby Certify that a true and correct copy of the foregoing was furnished, by U.S. Mail, this 13th day of January, 2021 to Kimberley Held Israel, Esq. McGlinchey Stafford, 10407 Centurion Parkway North, Suite 200, Jacksonville, FL 32256.

LILIA BELKOVA
Appelant Pro Se
2251 Buck Ridge Trl,
Loxahatchee, FL 33470
Phone: (561) 800-9596
DrLiliaBelkova@gmail.com

By:/s/ Lilia Belkova